RUDOLPH GROSS, Plaintiff, v. CONTINENTAL CAOUTCHOUC-EXPORT AKTIEN-GESELLSCHAFT (Continental Rubber Export Corporation), Defendant.

Supreme Court, Kings County, November 27, 1939.

*Moss, Marcus & Gardener* [*Jacob Chaitkin* of counsel], for the plaintiff.

*Henry P. Velte*, for the defendant.

NOVA, J.   Plaintiff instituted the present action by procuring a warrant of attachment, dated April 3, 1939, to be levied upon certain property located in the city of New York belonging to the defendant.   The latter is a foreign corporation organized and existing under the laws of Germany, its principal office being situated in Hanover.   It is engaged in the manufacture and sale of certain technical, surgical and sporting equipment.   Prior to June 30, 1938, plaintiff, then a resident and citizen of Austria, maintained an office for the transaction of business in the city of Vienna.   At such place plaintiff conducted an exclusive sales agency for the defendant, pursuant to written contract, upon a specified commission basis.   His business also consisted of the sale of defendant's products independently for his own account   Some time prior to April, 1938, the sales agency was terminated, effective as of June 30, 1938, by the mutual agreement of the parties.   Further, during May, 1938, plaintiff and defendant entered into an agreement, wholly unrelated to the first, whereby plaintiff sold to defendant the business which he had theretofore conducted on his own account.   Pursuant to such contract defendant agreed to pay the cost price of plaintiff's stock in trade and merchandise, together with certain import duties, taxes and freight charges; and defendant further agreed to pay over to plaintiff all moneys collected and realized from outstanding accounts then receivable

The complaint states two causes of action.   By way of the first of these plaintiff seeks to recover certain unpaid commissions alleged to be due him pursuant to the above exclusive sales contract.   It is alleged that the commission thus due amounts to 13,503.90 reichsmarks, having a value of some $5,401.56 in United States currency at the time of the accrual of the debt.   By way of the second of the actions plaintiff seeks to recover a balance of $3,780.59, representing the American value of some 9,451.48 reichsmarks, which allegedly defendant has become obligated to pay as a result of its purchase of plaintiff's business.

As a bar apparently to the maintenance of the first cause of action defendant alleges the following: That the agreement, pursuant to which plaintiff was constituted the exclusive sales agent for defendant, was entered into in writing on or about January 18, 1924; that said agreement expressly contained the provision

that " Hanover shall be the place of performance for the mutual obligations under this contract and this contract shall be governed exclusively by the German law; " that the German government has enacted from time to time laws concerning the control and management of foreign exchange, the most recent revision and enactment of the said laws having been on December 12, 1938, prior to the date of the commencement of this action; it is alleged that " the said law is known as the law concerning the control and management of foreign exchange. The law provides that all foreign exchange shall be under the supervision of the foreign exchange branch and that no money can be sent out of Germany without the consent of such branch of the government; " that the plaintiff has not procured the permission of the foreign exchange branch of the German government to have any moneys sent out of Germany to him.

Upon the instant motion for partial summary judgment plaintiff admits that the original contract of sales agency between the parties, entered into January 18, 1924, as above alleged, did in fact provide that their mutual obligations " shall be governed exclusively by the German law." He asserts, however, that the above original agreement was but the first of a series of subsequent agreements pertaining to the said sales agency. The last of such agreements was executed during the year 1935 and he categorically avers that in such last agreement there was no provision designating the law of Germany as controlling of the rights and obligations of the parties. This sworn statement has remained unchallenged by the papers in opposition and will thus be accepted as the fact upon the present application. The omission of a contractual provision of such character, however, is not of itself necessarily fatal to the position assumed by the defense herein  Irrespective of the omission thereof, the question still remains whether pursuant to the above-mentioned law of Germany the defendant may justifiably decline to satisfy a debt otherwise due and payable to plaintiff for sales commissions earned in Germany. It is elemental, unless a stipulation to the contrary appears, that the law of a country or state where a contract was made and is to be performed is ordinarily controlling of the rights of the parties thereto. In such regard it has been said that " ' however objectionable ' we may consider the conduct of a foreign government  *  *  *  ' It cannot be against the public policy of this State to hold nationals to the contracts which they have made in their own country to be performed there according to the laws of that country.' " (*Holzer* v *Deutsche Reichsbahn-Gesellschaft*, 277 N. Y. 474.) If consideration, however, be given to the statement of the above German law

which is alluded to in the answer (though it may be parenthetically observed at this point that the fact of such law has not been demonstrated by proper substantiating proof upon this motion), it will be immediately revealed as having no application to the present situation. That law apparently contemplates *some mere supervisory control of foreign exchange in Germany and interdicts the sending of funds beyond the territorial limits of that land.* It does not, however, assume to proscribe the payment of moneys by a debtor in satisfaction of a just debt due and owing to a creditor, whether such payment is to be made in Germany or elsewhere. Plaintiff here is not, therefore, seeking to compel defendant to do an act which contravenes the law of that land. The contract did not relate to the transmission of moneys from Germany and the satisfaction of a debt due thereunder will have no such effect. The subject-matter of the contract pertained merely to the rendition of services by plaintiff, and such services have, in fact, now been rendered. For the performance by plaintiff of his contractual obligation, an indebtedness has been incurred by the defendant. The situs of such debt, for the purpose of permitting the just enforcement of an available remedy, has not statically remained in the mere locus of its creation, but has followed the person of the creditor. And now what the creditor seeks is simply the satisfaction of that debt, in whole or in part, out of assets belonging to defendant which he has successfully subjected to attachment in this State. Satisfaction of the debt in such manner obviously will not necessitate the interdicted transmission from Germany of any funds to plaintiff.

In its bill of particulars defendant specifies, with respect to the debt due plaintiff for commissions earned, that on April 21, 1939, he paid " to the Austrian Credit Anstalt, Vienna," an item of 2,858.24 reichsmarks ' on blocked account of Rudolph Gross." Plaintiff alleges, without denial, that he never authorized payment of any sum on his behalf to the above agency and that he has never received any benefit therefrom. Defendant has not even attempted to demonstrate pursuant to what authority, governmental or otherwise, it purported to claim total or *pro tanto* satisfaction of the indebtedness due plaintiff by payment to the above agency. We need not indulge in speculation upon the matter. Suffice it to say that the specification of the payment, not shown to be authorized, is a tacit admission that at least to that extent an indebtedness is due plaintiff for the services which he has rendered. It is alleged, and not satisfactorily controverted, that the value of the above reichsmarks is $1,143.30. To that extent the motion for partial summary judgment, in so far as it relates to the first cause of action, is granted.

In defense to the second cause of action, which relates to the sale by plaintiff of the stock, etc., of its business to defendant, it is alleged that on or about April 12, 1938, the German government for Austria enacted a certain law known as section 80 of the Supplement of the Code of Law of the Country of Austria. In opposition to the motion for partial summary judgment, in so far as it relates to the second cause of action, defendant has supplied a copy of the above law. Its provisions are as follows.

" * * * the Reich's Governor may appoint provisional Administrators or provisional Supervisors for enterprises which have their seat in the country of Austria.

" (2) Branches of foreign enterprises which are situated in the country of Austria do likewise belong to enterprises with which this law is concerned.

" #2. * * *. During the duration of the administration, the authority of the owner of the enterprise is dormant and if he is a juridical person, his officers are prevented from acting for the enterprise.

" #3. The provisional Supervisor has to see to it that the business is conducted in a way which corresponds to the public interests. Their orders and instructions must be followed in the environs of the business.

" #4. The provisional Administrators and Supervisors are entitled to a corresponding compensation which is stipulated by the Reich's Governor. The amount of the compensation depends on the economical productiveness of the enterprise.

" #5. The provisional Administrators are obligated to employ while conducting the business the care of an orderly businessman.

" #6. The cost of the measures, taken in virtue of the preceding regulations, are to be paid by the enterprise."

A consideration of the foregoing provisions reveals that it contemplates merely governmental supervision *in the operation of a business* It does not purport to confer a retrospective jurisdiction upon a provisional administrator to act with respect to the interests of a person who, prior to the assumption by the administrator of control, has divested himself of complete ownership of the business. Under the uncontradicted facts shown herein, the plaintiff sold his entire business to the defendant on June 30, 1938. At such time he turned over to defendant all of his stock in trade and merchandise and all of his accounts receivable. He notified all of his customers to pay their bills directly to defendant. His employees were dismissed, the lease terminated, and the office furniture and fixtures physically delivered to the defendant. These acts evidence a complete divestiture by plaintiff of its ownership as

of the date mentioned. It is significant to note, however, that a provisional administrator to conduct the business was not appointed until September 1, 1938. The appointment of such governmental agent affected the rights, interests and prerogatives of the then owner. No reasonable interpretation of the above stated German law, however, justifies a conclusion that the appointment of the administrator effectuated an impairment of plaintiff's right to compensation for his prior sale of the business. That right had matured as of June 30, 1938, and defendant could not thereafter justly discharge its obligation, in whole or in part, by a payment of the debt thus incurred to the provisional administrator rather than directly to plaintiff. In its bill of particulars defendant states that as of September 30, 1938, it is to be thus credited with the sum of 6,404.04 reichsmarks and on November 26, 1938, with the sum of 2,228.65 reichsmarks. Under the German law, to which I have referred, it is not to be so credited for the reasons stated. The statement contained in the bill of particulars, however, is to be regarded as a tacit admission that such sums at least are due plaintiff upon the allegations of the second cause of action The uncontradicted value of such total of reichsmarks is $3,453.07 and to that extent, together with the sum of $1,143.30 upon the first cause of action, the motion for partial summary judgment is granted The foregoing disposition necessarily presupposes a denial of defendant's cross-motion for summary judgment.